FILED
STATESVILLE, N.C.
2005 JAN -6 PM 1:58
U.S. DISTRICT COURT
W. DIST. OF N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:04CV86-V

| | |
|---|---|
| JOHN D. LAWS, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | MEMORANDUM AND RECOMMENDATION |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #7) and "Memorandum in Support..." (document #8), both filed November 9, 2004; and Defendant's "Motion For Summary Judgment" (document #9) and "Memorandum in Support of the Commissioner's Decision" (document #10), both filed December 22, 2004. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On July 18, 2002, the Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"), alleging he was unable to work as of June 1, 2001, because of arthritis

"in both knees, feet, shoulders, back and right wrist." (Tr. 62.)[1] The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on October 8, 2003. On February 3, 2004, the ALJ issued a decision denying the Plaintiff's claim. The Plaintiff filed a timely Request for Review of Hearing Decision. On April 30, 2004, the Appeals Council denied his request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on June 30, 2004, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

The Plaintiff testified that he was born on February 2, 1959, and was 44 years-old at the time of the hearing; that he lived alone; that he had dropped out of high school, but had completed his G.E.D.; that he had not worked since June 1999; that he had two years of technical school training in automobile body painting; that he last worked in September, 1999; that his primary job experience was working in a furniture factory, most recently as a finish repairman; that he had also worked in the factory's cabinet room; that he lost his job when the factory closed; that he had attempted a variety of other jobs – automobile body painting/repair, general construction laborer, pouring concrete curbing, lawn care, and a ticket-taker; that he could no longer work because he could not bend, stoop, or walk for long periods due to pain in his knees; and that he derived rental income from

---

[1] The Plaintiff filed a previous disability application, which following a hearing was denied by an ALJ on May 31, 2001. On November 16, 2001, the Plaintiff filed an appeal in federal court, and on June 21, 2002, the undersigned affirmed the Commissioner's decision. See Laws v. Barnhardt, NCWD File No. 5:01CV190-H, "Memorandum and Order" at 15 (document #16) (denying Plaintiff's "Motion for Summary Judgment" and granting Defendant's "Motion for Summary Judgment"). The Plaintiff did not file a further appeal concerning that determination, which acts as res judicata through the date of the ALJ's May 31, 2001 decision.

a few mobile homes that he owned.

Regarding his medical and emotional condition, the Plaintiff testified that he suffered arthritic pain in both knees; that he considered himself to be "crippled"; that he often used a cane or crutches that his brother had given him; that he had arthritis in both shoulders and his right wrist, which effected his ability to lift; that he took Naproxyn and also used ice and/or heat packs for pain relief; and that on some occasions, pain affected his ability to sleep through the night. Plaintiff's counsel informed the ALJ that there were "no significant new medical records" other than a January 14, 2003 visit to the local health department for a renewal of the Plaintiff's Naproxyn prescription; and that otherwise, the Plaintiff had not sought medical treatment "for the last several years." (Tr. 128.)

As to daily activities, the Plaintiff testified that he was able to perform his personal activities of daily living; that he "kept up" his home; that he went grocery shopping; that he fed his goat and pigs; and that he used a riding lawn mower.

The Plaintiff's brother, Carl Laws, testified that he had observed the Plaintiff's swollen knees and that he gave the Plaintiff crutches.

The record also contains a number of representations by Plaintiff as contained in his various applications in support of his claim. On a Disability Report, dated July 10, 2002, Plaintiff stated that he was unable to work because of arthritis "in both knees, feet, shoulders, back and right wrist" (Tr. 62). The Agency interviewer who took the report telephonically noted that the Plaintiff had no difficulty hearing, breathing, understanding, thinking coherently, concentrating, talking, or answering.

On a Reconsideration Disability Report, dated July 3, 2002, the Plaintiff stated that his pain was worse and that he was not able to drive.

3

On an undated Claimant's Statement When Request for Hearing is Filed and the Issue is Disability, the Plaintiff stated that he was "doing less because of the cold weather." (Tr. 88.)

On August 7, 2002, Perry A. Caviness, M.D., completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was limited in his legs; that the Plaintiff should never climb ladders or scaffolds, and avoid more than occasional climbing of ramps or stairs, stooping, kneeling, crawling, or crouching; that Plaintiff could not frequently perform fine manipulation with his right hand; that Plaintiff should avoid concentrated exposure to hazards; and that with those limitations, the Plaintiff had residual functional capacity for medium work.

Although the Plaintiff assigns error to the ALJ's treatment of the alleged opinion expressed by Dr. John McCormick in a November 4, 1999 office note, the parties have not assigned error to the ALJ's factual recitation of the medical records (presented to the ALJ at or after the hearing). Moreover, the undersigned has carefully reviewed the Plaintiff's medical records and finds that the ALJ's summary is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> [Plaintiff] does have a diagnosis of suspected rheumatoid arthritis following a positive rheumatoid profile, but a body scan showed only mild inflammatory process. Rheumatology records from Paul Sutej, M.D., dated September 6, 1999, indicate that following thorough workup, he found minimal objective evidence of significant inflammatory process. Specifically, he found no evidence of synovitis of the right wrist, no clear-cut evidence of synovitis nor any specific CTD process involving the joints. While the claimant was found to have mild knee crepitus of the knees, there was no evidence of effusion upon examination. Dr. Sutej prescribed non-steroidal anti-inflammatory medications (Exhibits 1F and 4F).
>
> A magnetic resonance imaging (MRI) of the claimant's knee on December 12, 2000, showed synovial rice bodies in the lateral suprapatellar pouch area along with

moderate effusion, thickening of the synovia consistent with an inflammatory process. John T. McCormick, M.D., an orthopedist, opined that the knee was marginally improved with Indocin and that he was walking on it, but that his walking was abnormal resulting in back pain. Dr. McCormick offered injections for symptomatic relief (Exhibit B-3F).

(Tr. 16.)

As the Plaintiff points out in his brief, in his November 4, 1999 record, Dr. McCormick also noted that he "d[id] not recommend that [the Plaintiff] try to rehabilitate himself for gainful employment at this time." (Tr. 107.)

The ALJ accurately summarized the remainder of the medical records, as follows:

Medical records from Caldwell County Health Department dating from June 19, 1991 through December 20, 2001, revealed that the claimant was seen and treated for arthritic pain. On the visit of December 20, 2001, the claimant reported improvement in his arthritic pain on his prescribed medications of Naproxen Sodium, HCTZ, and Atenolol. He stated that the continued to use hot and cold compresses as needed. The claimant's weight was recorded as 186 pounds and his blood pressure reading was 140/94 (Exhibit B-1F).

On July 13, 2002, the claimant walked into the Caldwell Memorial Hospital emergency room with complaints of pain in his right knee from arthritis. His blood pressure reading was recorded as 183/103. Wickham B. Simonds, M.D., examined the claimant on July 15, 2002 for complaints of pain in the bilateral knees. On examination the knees were non-swollen with full range of motion and no deformity. Dr. Simonds informed the claimant that he would treat his pain this time, but that the emergency room would not provide any more pain medicine until he had a treatment with Dr. McCormick (Exhibit B-2F).

Dr. McCormick, an orthopedist with Carolina Orthopaedic Specialists, examined the claimant again on August 5, 2002, stating that he had not seen the claimant in almost two years. The claimant alleged that his knee pain was so bad that he had to walk on crutches and occasionally had back pain. Dr. McCormick noted on physical examination of the claimant that he was a muscular well-developed gentleman who appeared to be in no acute distress, but that he did have swelling in the left knee and appeared to have an acute attack of gout there. Dr. McCormick opined that the claimant had not been taking his prescribed Indocin medication and did not understand the mechanics of gout, as Aleve and Motrin did not relieve symptoms for gout. Dr. McCormick [noted] that the claimant's "major complaint today is that he can't get disability. We will try to help him with that disability application if we can.

> Honestly, I don't believe that he is eligible for disability based on chronic gout."
> (Exhibit B-3F).

(Tr. 16-17.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

### III. **STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. **DISCUSSION OF CLAIM**

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[2]

The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff suffered osteoarthritis and/or rheumatoid arthritis of multiple joints, which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff was unable to perform his past relevant work; that Plaintiff could use his arms and hands for normal grasping, holding, and turning objects; that the Plaintiff had the residual functional capacity ("RFC") for light and sedentary work;

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
  Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

and that based on the ability to perform light and sedentary work, and the Plaintiff's age, education, and work experience, Medical-Vocational Rule 202.21 directed a finding of "not disabled."

The Plaintiff essentially appeals the ALJ's determination of his residual functional capacity. See Plaintiff's "Motion for Summary Judgment"(document #7) and "Memorandum in Support ..." (document #8). However, the undersigned finds that there is substantial evidence supporting the ALJ's finding concerning the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited his ability to work. Agency medical evaluators concluded that the Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was limited only in his legs; and that the Plaintiff had a residual functional capacity for medium work, with nonexertional impairments related to reduced use of his knees, that is, reduced climbing, stooping, crouching, balancing, kneeling, and exposure to hazards, and of his right hand, that is, fine manipulation with his right hand.

However, the ALJ found the Plaintiff not disabled based on a residual functional capacity for light and sedentary work.

Additionally, the undersigned notes that none of Plaintiff's treating physicians ever

concluded that he was permanently disabled, nor did they place restrictions on his activities. However, the Plaintiff assigns error to the ALJ's refusal to give controlling weight to Dr. McCormick's November 4, 1999 "opinion," that is, an office note implying that the Plaintiff was unable to work "at th[at] time." (Tr. 107.) The undersigned concludes to the contrary that the ALJ's treatment of Dr. McCormick's "opinion" was supported by substantial evidence.

Assuming arguendo that Dr. McCormick's note amounted to an opinion that the Plaintiff was disabled even for some indefinite period of time, it is well-settled that although the opinion of a treating physician is to be accorded "great weight," in fact, the ALJ is not required to give it "controlling weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996), quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992). Furthermore, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantive evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590, citing 20 C.F.R. § 416.927 (1997).

Since Craig, the pertinent Social Security regulation has been amended, which now provides:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d) (3) through (5) of this section in determining the weight to give the opinion.

20 C.F.R. § 416.927(d)(2) (1999). See also Ward v. Chater, 924 F.Supp. 53, 55-56 (W.D.Va.1996) (noting that § 416.927(d)(2) supersedes the Fourth Circuit's "treating physician rule" as set forth in Craig).

Dr. McCormick's medical records as a whole do not support a finding that the Plaintiff was disabled. Indeed, when Dr. McCormick examined the Plaintiff on August 5, 2002, he noted that

he had not seen the Plaintiff in almost two years, and that Plaintiff had not been taking his prescribed Indocin medication. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

Moreover, a physical examination revealed that Plaintiff was "a muscular well-developed gentleman" who appeared to be in no acute distress; and that the Plaintiff's "major complaint today is that he can't get disability." (Tr. 104.) Contrary to his November 1999 note, which at most implied some temporary period of disability, Dr. McCormick then expressly stated that "[h]onestly, I don't believe that he is eligible for disability." Id.

The remainder of the undisputed medical record supports the ALJ's essential conclusion: that the Plaintiff suffered – but was not disabled by – osteoarthritis and/or rheumatoid arthritis of multiple joints. While an MRI, laboratory tests, and clinical examination suggest a rheumatoid or inflammatory process, there is no objective evidence that supports a more severe condition than the ALJ credited. Following his August 2002 visit with Dr. McCormick, the Plaintiff sought medical care only once, that is, in January 2003, when he went to the local health department where he denied any problems other than his arthritis pain, and he sought refills of medication that he admitted brought some improvement in pain levels.

The record also establishes that the Plaintiff engaged in significant daily life activities, such as bathing and dressing himself, performing household chores, mowing the yard, going grocery shopping, keeping and tending a goat and pigs, and managing several rental mobile home units. On

the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work" which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's osteoarthritis and/or rheumatoid arthritis of

11

multiple joints – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." <u>Mickles</u>, 29 F.3d at 921, citing <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and his objective ability to carry on a moderate level of daily activities, that is, Plaintiff's ability to take care of his personal needs, to perform a variety of household chores, and to oversee his rental property, as well as the objective evidence in the medical record, discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's

designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #7) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #9) be **GRANTED;** and that the Commissioner's determination be **AFFIRMED.**

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED,** this 4th day of January, 2005.

*Carl Horn, III*
CARL HORN, III
U.S. Magistrate Judge

United States District Court
for the
Western District of North Carolina
January 6, 2005

* * MAILING CERTIFICATE OF CLERK * *

Re: 5:04-cv-00086

True and correct copies of the attached were mailed by the clerk to the following:

Fred D. Pike, Esq.
P.O. Box 776
Lenoir, NC 28645

Jennifer A. Youngs, Esq.
U.S. Attorney's Office
227 W. Trade St.
1700 Carillon Bldg.
Charlotte, NC 28202

```
cc:
Judge RLV                      (✓)
Magistrate Judge               ( )
U.S. Marshal                   ( )
Probation                      ( )
U.S. Attorney                  ( )
Atty. for Deft.                ( )
Defendant                      ( )
Warden                         ( )
Bureau of Prisons              ( )
Court Reporter                 ( )
Courtroom Deputy               ( )
Orig-Security                  ( )
Bankruptcy Clerk's Ofc.        ( )
Other_____            ( )
```

Frank G. Johns, Clerk

Date: 1-6-05       By: T. Evans
                       Deputy Clerk